v. United Healthcare, which is 19-2066. And we'll hear first from Ms. Gilbride. Good morning. May it please the Court, Carla Gilbride on behalf of Dana Fitter and the other appellants. The District Court made two related errors when it enforced the delegation clause in United Healthcare's 2016 arbitration policy. First, it enforced that clause even though the plaintiffs had pointed out there was no evidence that any of them had agreed to the 2016 policy or even knew about its existence. And second, the District Court erred when it treated that dispute about the 2016 policy as a question of its enforceability and applicability instead of what it actually was, a question of whether an agreement between the parties was ever concluded. United Healthcare had the burden of coming forward with evidence that each of the plaintiffs agreed to the 2016 arbitration policy, but the record is devoid of any such evidence. There is no electronic acknowledgment as to any of the plaintiffs for the 2016 policy that they reviewed it and accepted it as there is for all of the plaintiffs with respect to earlier versions of United Healthcare's policy. Instead, the only evidence that United Healthcare offered was a statement from its declarant that United Healthcare, quote, issued, quote, a new policy on January 1st, 2016. But the declaration doesn't go on to explain how the policy was issued or what notice any of the plaintiffs had of its issuance. United Healthcare points out that each of the plaintiffs continued working for United Healthcare after January 1st, but under New Mexico law, specifically DeArmond v. Halliburton, there can be no proof of acceptance by performance without a showing that the offeree had actual knowledge of the offer and of the invitation of acceptance by performance. And there was no such showing here to the contrary that any of the plaintiffs knew about the 2016 policy or any of its terms, including the brand new delegation clause that was not present in any of the earlier versions of the agreement. And these questions about whether there was an offer and whether there was an acceptance go to what Congress in referred to as the making of the agreement to arbitrate. And under Section 4 of the FAA, Congress requires that a court satisfy itself that the making of the agreement to arbitrate is not at issue before compelling compliance with that agreement or enforcement of that agreement. And the district court here did not satisfy itself that an agreement was made. Instead, it punted that issue. It delegated the questions that the plaintiffs had raised about whether, you know, the fact that there was no evidence that they knew about or agreed to the 2016 policy because there was a delegation clause. But the problem is that that delegation clause was part of the very agreement whose making was an issue. And therefore, it was the court's responsibility to decide that question about the 2016 policies formation or making. It was the court's responsibility to answer that question itself, not to delegate it. It abdicated that responsibility in contravention of Section 4 of the FAA and in violation of guidance from the U.S. Supreme Court about the distinction between some questions that can be delegated to arbitrators and other questions that cannot. In Rent-a-Center versus Jackson, which the district court relied on, the Supreme Court made that distinction clear. It said that that opinion was concerned with challenges to the validity of the arbitration agreement and then challenges to the validity of a delegation clause embedded within that arbitration agreement. And in footnote 2 of the Rent-a-Center opinion, the Supreme Court said that these questions of validity are different from the question of whether an agreement between the parties was ever concluded. Later that same year in 2010, Justice Thomas built upon this footnote in Rent-a-Center and that distinction between delegable and non-delegable questions in the Granite Rock versus International Brotherhood of Teamsters opinion. When he described questions that are usually decided by a court, questions like the scope of an agreement to arbitrate or its enforceability, but that can be delegated to an arbitrator when there is a valid provision specifically committing them to the arbitrator. But after explaining that category of delegable questions, Justice Thomas went on at page 297 of the Granite Rock opinion to say that the question of whether the clause was agreed to is always for the court to decide. In the years since Rent-a-Center and Granite Rock were decided, many federal appellate have looked at this issue and have decided and have explained that questions of whether an agreement was ever formed cannot be delegated to the arbitrator. Specifically, last year, the Second Circuit in Doctors Associates versus Olima Yehu said that the question of whether the parties formed an agreement to arbitrate in the first place cannot be delegated. Later that same year, the Fourth Circuit in Berkeley County School District versus Hub International agreed saying that these questions as to contract formation go to the making of an agreement to arbitrate under Section 4 of the FAA and are always for the court to decide, including when a delegation clause is present. And the Fifth Circuit has reached this conclusion on several occasions, including in the Kubala case that was cited favorably by this court in the unpublished opinion of Fundamental Administrative Services versus Cohen. Even though that decision was unpublished, it reached the right result. It based its opinion on well-reasoned decisions from other courts of appeals and it is consistent with the FAA and with binding Supreme Court precedent. The district court misunderstood this precedent and would benefit from the court's guidance on the question of how delegation clauses intersect with the court's fundamental responsibility to decide if an agreement was ever made. Because the district court erred in conducting this threshold question and answering this and because there is absolutely no evidence in the record that the UnitedHealthcare did communicate these terms to the plaintiffs and that the plaintiffs did agree to them in 2016, we believe as a matter of law that the order compelling arbitration should be reversed and the case should continue on the merits of plaintiffs' wage and overtime claims. However, if the court is not inclined to reverse as a matter of law, we would ask instead for a remand for a trial or an evidentiary proceeding under Section 4 of the FAA for the court to determine in the first instance whether an agreement to arbitrate was formed or was concluded between these parties in 2016. That concludes my affirmative presentation, but I'm happy to Judge McHugh, do you have questions for Appellant's counsel? With respect to the reversing or remanding, it wouldn't necessarily go to a trial. What it's required is for the district court to first determine that there is an actual issue about formation, correct? It's correct that the district court has to determine if there is an issue of formation, Judge McHugh, and we believe that the plaintiffs have raised that issue of formation when they stated in their opposition to UnitedHealthcare's motion to dismiss at page 241 and 244 of the appendix that there was no evidence that the plaintiffs even knew about this agreement. So we believe that issue has been raised and the district court I agree you raised it, obviously, that's what the appeal's about. But my question is, couldn't the district court take some preliminary additional information, evidence, and determine, for example, as it was argued in the brief, although I agree with you there's nothing in the record, that the 2016 agreement was posted prominently on the employee website and where every day and they continued to work and therefore there's no issue about contract formation. The district court could look at that issue first before immediately impaneling the jury, couldn't it? Yes, Your Honor. Certainly the district court could hold an evidentiary hearing, hear from the parties what evidence they have about how this policy was communicated to the plaintiffs in 2016. Again, not to be redundant, but it's our position that UnitedHealthcare has an opportunity to present that evidence in the first instance and didn't do so and shouldn't necessarily benefit from getting a second bite at the apple here, but certainly would be within the district court's discretion to hear evidence on that matter. Okay. I don't have any more questions. All right. Thank you, Judge McHugh. Judge Iye, do you have questions for counsel? No, I don't. Thank you. Okay. I think I have just one question, counsel, and that is with regard to the necessity of a cross-appeal for what UAHC has argued would be an alternative ground for affirmance as respect to the 2006, 2012, 2015 agreements. How would enforcement of any one or more of those prior policies expand UAHC's rights beyond the judgment that was entered? In several ways, Your Honor. For one thing, it would allow UAHC to enforce arbitration agreements, at least within the Tenth Circuit, that several other courts around the country have found to be illusory, that four courts, two in California, a district court in Hawaii, as well as a district court before this opinion below in New Mexico, have found to be a unilateral right to modify or amend the arbitration clause even after a claim had accrued under it. Another way in which it would expand UAHC's rights, if it could go ahead and sort of enforce earlier agreements that the district court did not allow it to enforce, is that it could enforce those provisions against former employees who left UAHC's employment before January 2016, when this new arbitration policy that we've been focusing on here today went into effect. Currently, everyone who is putative opt-in member of this class has continued working at UnitedHealthcare after January of 2016, but there certainly could be members of the class who have not yet opted in or who would be part of the Rule 23 class under New Mexico law who stopped working for UnitedHealthcare before the 2016 policy allegedly went into effect. And then they would also be bound if the earlier agreements were enforceable. A third way in which UAHC's rights would be expanded, if it could enforce the earlier versions, is that the earlier versions are actually different in other respects besides the addition of a new delegation clause for the first time in 2016. Specifically with respect to attorney's fees, there is a provision allowing UnitedHealthcare to have its attorney's fees covered by claimant's counsel if the arbitrator deems the claim to have been frivolous. And that language appears at Appendix 62 in the 2006 version of the agreement, at page 125 of the appendix for the 2012, and at page 145 of the appendix for the 2015 agreement, but it was not present in the 2016 agreement. So, even under the contracts themselves, UnitedHealthcare has additional rights under the earlier agreements that it would not have under the 2016 version. Okay. Thank you, counsel. So, I think you have some time left. So, we'll hear from the affiliate. Good morning. May it please the court. I'm Rob Friedman for Affiliates, UnitedHealthcare, Inc., UnitedHealthcareServices, Inc. Your Honors, this court should affirm the district court for several independent reasons, and what I'd like to briefly do is summarize those reasons, then go into a little bit more detail. And first and foremost, and it's something that my colleague did not address in her opening statements, is appellants waived their formation argument on appeal by not raising it below. And even if their failure to preserve the argument could be construed as a forfeiture, and we don't think it is, we think it's a waiver, appellants' failure to set the standard of review in her opening brief, which they admit to, let alone any discussion, means she waived the argument here at the Court of Appeals. With respect to the enforcement of the delegation provision, the district court followed Rena Center West, trolling Supreme Court precedent, and properly applied the delegation provision, and they characterized the dispute as one over applicability and enforceability, and that's exactly what it is. That was the argument that appellant made at the district court. That is how the district court understood it, and there should be no dispute that a clear and unmistakable delegation provision, as we have here in our agreement, does in fact cover applicability and enforceability issues. Additionally, Your Honor, the appellant never challenged the delegation provision specifically. They challenged the agreement generally, which is improper under, again, Prima Paint, Buckeye, Rena Center, et cetera. So on those bases, Your Honor, this should be affirmed. There's also additional reasons and the alternative which we set forth, and that is going back, as Your Honor asked a second ago, to the 2006, 2012, and 2015. There are issues that the court did not address which would allow for those agreements to be enforced. First and foremost, and this is not something that was addressed in the opening statement by my colleague, those agreements include the AAA rules, and this circuit has held that incorporation of the AAA rules means essentially a clear and unmistakable agreement that the arbitrator decides gateway issues. So while at the district court level, even though we moved on the 2016 agreement, appellants spent most of the time focusing on agreements that were really there more for context and for enforceability. We now, in the alternative, ask that if the court were not to enforce the 2016 agreement, which is the operative agreement should be enforced, that it go back and enforce the previous agreements. And the challenge to those, and the reason for the district court invalidating them based on an illusory issue consideration, that itself would be subject to the AAA rules and the Rule 6A, which requires that the arbitrator decide those issues in the first instance. So in the alternative, Your Honors, to the extent the 2016 agreement is not enforced, at the very least, the 2006, 2012, and 2015 agreements should be enforced with respect to sending the challenge, which is consideration, to the arbitrator in the first place. Additionally, and in the alternative, there is another source of consideration that's a consideration of new employment, which was not considered by the court below, which would be another alternative basis to enforce the arbitration agreement. And then lastly, Your Honor, even the offer letters accompanying the first agreement, which were sent to all these individuals, the appellant and opt-in plaintiffs, are themselves enforceable arbitration agreements. So if I may, I'd like to start and go into a little bit more detail about the issue of waiver, because it's a significant part of our argument. We cite to numerous 10th Circuit cases, including Schrock, McKissick, Richardson, that discuss how a party waives or forfeits an argument at the court below. In this case, inexplicably, appellants spend the overwhelming majority of time at the district court below arguing about the previous agreements, which we were not moving to compel, instead of addressing in 2016. It's critical to understand, Your Honor, that while we at LA submitted a detailed declaration, which I'll get into in just one second, they did not submit any declaration. They essentially blew off our arguments to establish the existence of the arbitration agreement, just said, these are irrelevant, these do not apply. Never once below do they mention the issue of formation. Now at the Court of Appeals, their briefing is consumed with this idea that, well, this is not a properly formed agreement, but they never made that argument below. Rather, they made the argument that this is irrelevant, this is invalid. And Judge Vasquez below properly understood their argument, if any argument, to be a challenge regarding applicability and enforceability, which is why consistently throughout her order, the judge says, wait a second, we have a delegation provision here, it's clear and unmistakable, and issues of applicability and enforceability are for the arbitrator in the first place. And the judge also recognized that they never challenged the delegation clause. Going back to these, and by the way, Your Honor, we contend that they waived the argument, and we contend they waived the argument because they made another argument. They easily could have made this, they made a breezy and ambiguous argument saying it's invalid. They very well could have challenged formation, they did not. And the cases we cite, Schrock, McKissick, Richardson, hold very clearly that these types of vague arguments that are unclear are not enough to preserve the argument. Your Honor. Sorry, I gave you a train of thought, but I did want to, before I forget it, let me ask you a clarifying question. And that is, so when Judge Vasquez understood the argument that Ms. Schrock Federal was making with regard to the 216 agreement, you would not, since she understood that they were challenging the validity of the 2016 agreement, you're not suggesting, are you, that they forfeited any argument with regard to the import of the 2016 agreement, right? Because, Your Honor, I am, no, Your Honor, we are saying that they have forfeited the right, or waived, we don't think it's a forfeiture, but I'll get to that. We are arguing that they waived the right to challenge the formation of the 2000 agreement as compared to the issue of validity or enforceability. That's the argument they made, very ambiguous, that's the language they used, and that's the language the judge used. So yes, Your Honor, they can change, challenge the validity and enforceability, but issues of under Renner Center, West First Jackson, Harvey Schein, and many cases from this circuit, and around the country, properly hold that under a clear and unmistakable delegation clause, those issues are for the arbitrator, and that's exactly what Judge Vasquez did. They get to make this argument again, Your Honor. However, that argument must be made before the arbitrator, and before the arbitrator, they can make whatever argument they want regarding whether or not the agreement is invalid and unenforceable. The point we're trying to make is the issue of that it was not properly formed is an argument they waived, and to the extent, Your Honor, that this court decides, well, maybe it's not a waiver, it's a forfeiture, and some of these cases, like McKissick, recognize that sometimes it's a difficult distinction. Even if it's a forfeiture, it would still mean that they forfeited the ability to make that argument in this court, because in their opening agreement, excuse me, their opening brief, they do not set forth the standard or why any type of argument could survive plain error, and in that regard, Your Honor, in McKissick and Richardson, the courts have held that to the extent you don't raise the issue of plain error in the opening brief, that, quote, surely marks the end of the road for an argument for reversal not first presented to the district court. Even, Your Honor, if the court were to accept a forfeiture and allow them to go through the analysis for plain error, because the issue of formation has not been resolved by this court, it's very unlikely they could survive that challenge. I also want to go on, Your Honor, to... Counsel, let me interrupt before you go on. This is Judge McHugh. I am reading the district court's statement of the issue, and it's pretty clear to me that the district court understood that the reason they claimed the 2016 arbitration policy was irrelevant was, quote, because there is no evidence that any of them signed, read, or even knew about this policy. To me, that's the exact same argument they're making on appeal, and before you respond, let me also point out that the sole ground relied upon by the district court in compelling arbitration was the 2016 policy's delegation clause, which was invoked by you for the very first time in UnitedHealthcare's reply brief in the district court. So there wouldn't have been any opportunity for them to respond to a specific delegation clause argument with respect to the 2016 policy. Okay, go ahead. Well, Your Honor, I'll start with the last comment you made first, if I may. Your Honor, to the extent they believed that there was something they had to address, they could have filed a SIR reply, and the court evaluated the totality of the briefings below and said they did not address it. With respect to the order, Your Honor, ultimately, the court characterized the issue as one whether or not the 2016 arbitration agreement is valid and enforceable, and that's a logical approach because that's exactly what appellants argued below. Your Honor, they never use the term formation, and they say it's irrelevant. Your Honor, I want to go back also to the issue of the formation, which we did prove up, and that is we proved under New Mexico law by virtue of the Sproud Declaration, which they say is inadequate, but we argue is adequate. The Sproud Declaration shows that these individuals were sent a letter. They were also sent an arbitration agreement, which they signed, and in that arbitration agreement, to be clear, I'm not arguing that those are enforceable outside of alternative arguments. This is in furtherance of our argument of the 2016 agreement, but in those agreements, they agreed that UnitedHealthcare affilee could amend these agreements with 30 days' notice before January 1st of each year by issuing a new agreement, and that's exactly what we did. So that is proved up in multiple parts of the declaration. In order to understand the 2016 issuance, which the district court understood as promulgating a new arbitration agreement, it's important to understand the actions of the appellants with regard to the earlier agreements, and they signed off on agreements, Your Honor, stating that UnitedHealthcare could amend these. They would post them on the Internet site. So through that evidence, which clearly is unrebutted because appellants did not submit any declaration and rather relied on arguments of counsel, through the declaration, we've proven that these individuals in some case more than once signed off on agreements saying that UnitedHealthcare had the right to amend, modify via the Internet by issuing a new agreement, and via paragraph 33 of the Sprout Declaration, we established that's exactly what we did in 2016. So we did establish through our evidence that the agreement was proper and valid. They did not challenge the delegation clause, and while they refer to a challenge today, this is a challenge that has no evidence whatsoever, and we think it was waived. With respect, Your Honor, to our alternate argument, I want to go back to this court has not reached the issue of formation. We don't think the court needs to reach that here because we think they've waived that. We also think this is not an issue of formation, but to the extent the court were to characterize this as an issue of formation, there is a patchwork of different jurisdictions regarding how courts have evaluated formation issues, and again, we don't believe there's a formation issue, that it was understood to be a formation issue, but even in the Sparr case, which is a case that's relied on quite a bit by Appellant's Council, the court characterized Sparr's challenges as one of formation to the making, and then analyzed whether or not there was a delegation provision within the agreement. Once it determined that there was not a delegation provision, the court took it upon itself to decide the issue. We read the holding of Sparr to be, had there been a clear and unmistakable delegation provision, which clearly we have in our agreement, the court in Sparr would have applied that delegation provision to the disputed hand and decided that a formation issue is for the arbitrator in the agreement that formation is for the arbitrator to decide under Belknap versus Iapsus Healthcare. The cases that my colleague cites for the proposition that formation is never for the arbitrator do not stand for the proposition she stayed for. In those cases, Buckeye and Renner Center, the court simply said there are differences between enforceability issues and deciding formation issues today, and that's an issue that the Tenth Circuit has not decided. Your Honor, I can go on to discuss some other issues regarding the alternatives. I think that's clear in our briefing. Are there any questions that I can answer in furtherance of our argument? So, before I turn it by, thank you, Counselor, before I turn it by colleagues for questions, Kevin, has he used up his 15 minutes? I'm sorry, Judge, what did you say? I was just asking what his time situation is. Has he used up his 15 minutes? Yeah, after these counsel's time has expired. Okay, I was just curious about that. Judge McHugh, do you have additional questions? No. Okay, Judge Ari, do you have questions? Yeah, I just want to restate the argument because I thought when we started at the beginning, you conceded a sort of formation versus enforceability framework that formation questions are for the court to decide, but you do not. Is that correct? Do you think formation issues can be for the arbitrator? Yes, Your Honor, we do not concede that. We don't think they made the formation argument, and we don't think the issues before the court have to do with formation. We think they're enforceability validity, but to the extent the court characterized this as a proper challenge to formation, yes, Your Honor, we do not concede that formation cannot be decided by the arbitrator. Okay, thank you. All right, Judge Ivey, do you have any additional questions? No, I'm good. Thank you. Okay, thank you. Ms. Freedman, let me just ask you on the necessity of a cross-appeal to defend the judgment based on the 2006, 2012, or 2015 agreements. I want to give you an opportunity to respond to what Ellen's counsel gave for her three reasons in arguing that considering these three agreements wouldn't in fact require a cross-appeal because it would expand the effect of the judgment. So, could you respond to her three arguments? Sure, Your Honor. Absolutely. Thank you for giving me that opportunity. First of all, Your Honor, of course, our win may be affirmed on any basis in the record, and the basis for the—first of all, we had never moved to enforce those, so it's something that appellants had argued and the court did take up, but it's not something we ever moved. We never moved to enforce them. However, in the alternative, we're asking them to be enforced. Additionally, Your Honor, we're moving on other grounds. Yes, it's true that the district court said these are invalid on the basis that they were illusory because of the consideration issue, but what was not considered on the court—by the court—was the issue that by incorporating the AAA rules, it's essentially the same as having a remiss and or delegation provision. That was not decided by courts, and it's a new argument, and based on our ability to be affirmed on any basis, it would be proper, so we do not have to file a cross-appeal. The other issue as far as a cross-appeal is, Your Honor, we won. So, what would be the basis of cross-appealing in the first place to say, well, although we won, Your Honor, we're moving to appeal a question we never asked the court in the first place, which was to enforce those agreements. So, we never asked to appeal. With respect, and I don't know that I completely understood one of the other points that my colleague had, but this idea that now the court would be enforcing agreements that had not been enforced by other courts, again, we're making a different argument, and the fact that other district courts didn't enforce it would not be a reason for this court not to affirm on an alternate basis. It certainly would not be a basis for this court to not enforce the agreements based on the of the delegation provision through Rule 6A of the AAA, this court should follow Renta Center, and it should follow Belknap and Dish Network, 10 circuit cases that allow for the incorporation of those rules, and it should enforce it on the sole basis even, in addition to other bases, that the issue of consideration, whether that be new consideration or consideration issues, has to be decided by the arbitrator in the first place. So, Your Honor, I hope I answered your points that my colleague made earlier. Yes, you have. Let me follow up on one of our arguments, and that is that some of the prior three agreements included an attorney fee provision that's asked in the 2016 agreement, and so, because we have to decide jurisdiction on our own, even federal jurisdiction, without regard to whether it's right to enforce this right here, what about one of our three arguments that if we were to enforce the 2016 agreement, we would be enforcing an agreement without an attorney fee provision, and that if we then say we're going to affirm an alternative ground by enforcing one of the three prior agreements, that will substantially increase the UHC's rights because now we're going to be enforcing arbitration agreements that are substantively different with regard to the inclusion of an attorney fee provision. Why isn't that a substantive change in the parties' underlying rights based on which agreement is enforced? Well, Your Honor, for one thing, the arbitrator under each of these agreements has the right to interpret the agreement. So, to the extent the arbitrator decides not to enforce that, and of course the arbitrator has to follow the law, the arbitrator does not have to enforce it. It's not an expansion of rights, and even without a provision allowing the arbitrator to award fees in the case of a frivolous case, under applicable federal rules of civil procedure, an arbitrator could do that anyway under, excuse me, some of the statutes, Title VII and what not, if a case is frivolous. But to the extent there's some inconsistency between the two agreements, that could be severed out or the arbitrator could decide not to apply it. So, ultimately, the arbitrator can harmonize these different agreements as it is ultimately the arbitrator who makes a decision how to enforce these agreements. Okay, thank you. Those are really all the questions I had. Thank you so much, counsel. How much time does the appellant have? Appellant's counsel has five minutes and 30 seconds. All right, we'll hear from the appellant. And thank you, Your Honor. Thank you, Mr. Friedman. Thank you, Your Honor. First, to begin with waiver, the case that appellees cited for the waiver argument, Schrock v. Wyeth, talked about arguments being raised below that are vague or ambiguous. There was nothing vague or ambiguous about what plaintiffs said, which was that there was no evidence that this agreement for N-2016 was ever seen by any of the plaintiffs or that they ever knew about it. And the district court certainly understood that and dealt with the issue in those terms. And, more importantly, defendants certainly understood it because they spent pages of their reply brief discussing it as a formation question, saying that they had met the elements of contract formation under New Mexico law and walking through those elements of contract formation. So, certainly, the argument was well understood and fully presented to the district court as one of formation. Also, it's interesting that UHC's counsel is saying today that they were always only concerned with the 2016 policy, not any of the earlier policies. There are some, you know, 18 to 20 paragraphs in the Sproud Declaration talking about all of the earlier policies and when they were accepted by each of the plaintiffs. And there's only a single paragraph with respect to the 2016 policy, only, again, saying that it was issued on January 1st. Nothing about how it was communicated, where plaintiffs were given notice of it, and considering the fact that it did contain materially different terms, among others, the fee provision we've been discussing, but also the delegation clause that was introduced for the that absence of evidence is significant. Judge McHugh pointed out that the delegation clause was first referenced by UHC in its reply brief and there's authority from the 11th Circuit in the case of in rechecking account overdraft litigation at 754 S. 3rd 790 saying that when And we would say that, you know, here that delegation clause argument, which was raised for the first time in the reply brief, was raised with respect to the delegation that they're now arguing, and I believe Appaloozie's counsel himself just referred to it as a new argument. They're saying that incorporation of the AAA rules also affected a delegation or created a delegation with respect to the earlier 2006, 2012, and 2015 agreements. That argument was certainly never presented to the district court, even in the reply brief, and so our position would be that these delegation issues were waived with respect to all of the agreements, including the 2016 policy. But a separate reason why plaintiffs should not have had to specifically challenge the delegation clause under Rent-A-Center is that this is not a case governed by Rent-A-Center. This is a case about contract formation, and as Rent-A-Center made clear in footnote two, nothing in its opinion addressed questions about whether an agreement between the parties was ever concluded. That's the type of question that plaintiffs raised below when they said there was no evidence that the plaintiffs knew about this agreement. And so just like Starr v. Secco, where this court held that a challenge to a person's mental capacity went to the making of the arbitration clause in a contract under Section 4 and the Supreme Court's opinion in Prima Paint, when a question like, you know, whether there was evidence that any agreement was made at all, whether there was evidence of an offer, whether of course in this case the whole contract was an arbitration agreement, but it also goes to the making of the delegation clause, which is an embedded arbitration agreement within the larger arbitration agreement. And if there was no offer to arbitrate here and no evidence of acceptance, that lack of offer and lack of acceptance, that failure of a contract to be made, is equally fatal to the delegation clause that UHC seeks to enforce. And so when, you know, plaintiffs did sufficiently address that when they made their general statement that there was no evidence of any agreement here, and just as in Starr v. Secco, that statement would apply to the smaller delegation clause as well as to the contract as a whole, which in this case is a 2016 arbitration policy. I believe that I've addressed all of the points I wanted to make in rebuttal, but I am prepared to answer any questions that the court has. Okay, thank you, counsel. Judge McKee, do you have additional questions for Appellate's counsel? No, thanks. Thank you, Judge Hyde. Do you? No, I don't. Thank you. All right. Thank you, Aide. Nor do I. So this matter will be submitted. I do...